IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ALLSTATE VEHICLE AND
PROPERTY INSURANCE COMPANY and
ALLSTATE INDEMNITY COMPANY,

       Plaintiffs,

   v.                                 CIVIL NO. 1:24-CV-06
                                         (KLEEH)

RODGER W., individually and as
the Administrator of the Estate of
Hyrum W., and CARLEY S.,

       Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Pending are cross-motions for summary judgment. For the reasons discussed herein, the Court **GRANTS** Plaintiffs' motion and **DENIES** Rodger W.'s motion.

**I.    BACKGROUND**

On July 15, 2022, four-month-old Hyrum W. ("Hyrum") died while in the care of his foster mother, Defendant Carley S. ("Carley"). Compl., ECF No. 1, at ¶ 7. According to the West Virginia Department of Health and Human Resources ("DHHR"),[1] Hyrum died of asphyxia. Id. ¶ 9. DHHR concluded that child neglect occurred. Id. On or about August 3, 2023, Plaintiffs Allstate Vehicle and Property Insurance Company and Allstate Indemnity

_____

[1] On January 1, 2024, DHHR was reorganized into three separate departments.

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Company (together, "Plaintiffs") were notified of claims being asserted by Defendant Rodger W. ("Rodger"), the paternal grandfather of Hyrum, against Carley in connection with Hyrum's death. Id. ¶ 8. On December 20, 2023, Plaintiffs sent a letter denying coverage for the incident. See Def. Exh. 1, ECF No. 65.

On January 5, 2024, Plaintiffs filed this action against Rodger (individually and as the Administrator of the Estate of Hyrum) and Carley. See ECF No. 1. Specifically, Plaintiffs seek a declaratory judgment on the issue of liability insurance coverage. Now pending are cross-motions for summary judgment, which are fully briefed and ripe for review. See ECF Nos. 61, 62. The facts are largely undisputed.

A.   **General Background**

Carley is an only child who has a close relationship with her parents, Jerry S. ("Jerry") and Antoinette S. ("Antoinette"). Def. Exh. 7, ECF No. 65-6, at 9:1-6. Shortly after she started college, Carley moved from her childhood home, 1078 Windsor Avenue (the "Windsor Property"), to a condominium purchased by her parents in Suncrest (the "Suncrest Condo"). Id. at 11:2-16; Def. Exh. 8, ECF No. 65-7, at 20:8-16. After living in the Suncrest Condo for almost a decade, Carley moved into her current home at 1082 Koontz

**ALLSTATE V. ESTATE OF HYRUM W.**                                **1:24-CV-06**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Avenue (the "Koontz Property").[2]  Def. Exh. 8, ECF No. 65-7, at 16:12-22.  Jerry and Antoinette own 99% of the Koontz Property but have never lived there.  Def. Exh. 6, ECF No. 65-5, at 10:12-19; Def. Exh. 7, ECF No. 65-6, at 48:21-22.  They still live at the Windsor Property.  Def. Exh. 7, ECF No. 65-6, at 8:5-16.  The Koontz Property and the Windsor Property are one block away from each other.  Id. at 29:15-18.  The properties' proximity allows Carley to visit her parents often.  She stays at her parents' house when they are out of town, has dinner with her parents regularly, and visits her dog, which stays at the Windsor Property because it has a fenced-in yard.  Id. at 35:16-36:13; Def. Exh. 8, ECF No. 65-7, at 28:22-29:5, 50:11-51:1.  Carley helps take care of her mother, who has inflammatory bowel disease, and her grandmother, who lives nearby.  Def. Exh. 7, ECF No. 65-6, at 31:16-20, 36:24-37:1; Def. Exh. 8, ECF No. 65-7, at 29:3-5.  Carley's parents maintain her childhood bedroom in the exact condition as it was when she first moved to the Suncrest Condo.  Def. Exh. 7, ECF No. 65-6, at 13:18-14:1.

Growing up, Carley received a lot of support from her parents, and the support continues today.  Carley has never paid her parents

---

[2] Of the three properties where Carley lived, she has a legal interest in only two: a one-third interest in the Suncrest Condo and a one percent interest in the Koontz Property.  Def. Exh. 6, ECF No. 65-5, at 10:12-19.

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

rent, does not pay for home insurance, and does not pay for automobile insurance. Id. at 17:15–21:5. Carley pays the utility bills at the Koontz Property and pays for her daily living expenses. Def. Exh. 8, ECF No. 65-7, at 23:13–21. She is employed at West Virginia University Hospitals and has maintained full-time employment there for over seven years. Id. at 13:8–22. Over the past seven years, Carley took one year off work to go back to school. Id. at 13:19–22. During her year off, her parents provided her with a living stipend so that she could focus on her studies. Id. at 27:21–28:9; Def. Exh. 7, ECF No. 65–6, at 30:7–16.

Hyrum died on the Koontz Property. See Pl. Memo., ECF No. 61-1, at 12. At the time of Hyrum's death, Carley was 30 years old, had one adopted daughter, and was fostering Hyrum and two other children. Def. Exh. 8, ECF No. 65-7, at 57:22–58:6. She was a full-time employee at West Virginia University Hospitals. Carley was living at the Koontz Property with her adopted child, foster children, and romantic partner. She never stayed at the Windsor Property with her foster children because the foster children were not legally allowed to stay the night anywhere other than the Koontz Property. Id. at 31:2–21.

4

**ALLSTATE V. ESTATE OF HYRUM W.**                           **1:24-CV-06**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

### B.    The Insurance Policies

At issue are two home insurance policies and a personal umbrella policy issued by Plaintiffs.  The first home insurance policy covers the Windsor Property (the "Windsor Policy"), Policy No. 977 213 793.  See Def. Exh. 4, ECF No. 65-3.  The Windsor Policy was issued only to Jerry and Antoinette.  Id. at 6.  It includes family liability protection and guest medical protection.  Id. at 7, 24.  The other home insurance policy at issue covers the Koontz Property (the "Koontz Policy"), Policy No. 801 656 142.  See Def. Exh. 2, ECF No. 65-1.  The Koontz Policy was issued to Jerry, Antoinette, and Carley.  Id. at 6.  Family liability protection and guest medical protection were not purchased under the Koontz Policy.  Id. at 7.  The Koontz Policy, however, contains a Secondary Residence Endorsement.  Id. at 8.  The Secondary Residence Endorsement states,

> **Your** policy provides **Family Liability Protection — Coverage X** and **Guest Medical Protection – Coverage Y** under **Section II** of the policy for the **insured premises**.  However, if this policy providing **Family Liability Protection – Coverage X** and **Guest Medical Protection – Coverage Y** is no longer in force, whether canceled of otherwise terminated, no coverage for **Family Liability Protection – Coverage X** or **Guest Medical Protection – Coverage Y** shall apply.

Id.

5

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

The third policy at issue is a Personal Umbrella Policy (the "PUP Policy"), Policy No. 977 511 879.  See Def. Exh. 5, ECF No. 65-4.  The PUP Policy was issued to Jerry and Antoinette, with Carley identified as a vehicle operator.  See id.  All three policies were in effect at the time of Hyrum's death.

On December 20, 2023, following Hyrum's death, Plaintiffs denied coverage for the incident.  See Def. Exh. 1, ECF No. 65. Their denial letter stated that nothing contained within it was "intended to waive any of the terms, conditions, limitations or exclusions" of the relevant policies. Id. at 19.  Plaintiffs then filed this action seeking declaratory judgment with respect to coverage, and now cross-motions for summary judgment are pending on the question.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

6

ALLSTATE V. ESTATE OF HYRUM W.                    1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits to determine whether either of the parties deserves judgment as a matter of law."  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted).  The same standards of review apply when both parties file motions for summary judgment.  See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment.").

## III. DISCUSSION

Rodger concedes that the Koontz Policy does not provide coverage for claims arising from Hyrum's death.  Accordingly, the only policies at issue are the Windsor Policy and the PUP Policy.

ALLSTATE V. ESTATE OF HYRUM W.                                    1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

For the reasons discussed below, the Court finds that neither provides coverage.[3]

### A.    The Windsor Policy does not provide coverage.

The Windsor Policy does not provide coverage for claims arising from Hyrum's death because Carley is not a resident of her parents' household.  Even if she were, coverage is otherwise excluded because the Koontz Property is not an insured premises under the Windsor Policy.

#### 1.    Carley is not a resident of her parents' household under the Windsor Policy.

The Windsor Policy provides coverage for Jerry and Antoinette, as insured persons, as well as "any relative" if the relative is a "resident" of their "household[.]"  See Def. Exh. 4, ECF No. 65-3, at 32.  If the phrase "resident of your household" is not otherwise defined in a homeowners' insurance policy, "the phrase means a person who dwells — though not necessarily under a common roof — with other individuals who are named insureds in a manner and for a sufficient length of time that they could be considered to be a family living together."  Syl. Pt. 3, Farmers Mut. Ins. Co. v. Tucker, 576 S.E.2d 261 (W. Va. 2002).   To

---

[3] Plaintiffs raise an alternative argument in their motion for summary judgment: that Carley S.'s claim was untimely.  Because the Court finds no coverage under any of the policies, it need not analyze this argument.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

determine whether this standard is met, courts consider a number of factors, including but not limited to (1) "the intent of the parties"; (2) "the formality of the relationship between the person in question and the other members of the named insureds' household"; (3) "the permanence or transient nature of that person's residence therein"; (4) "the absence or existence of another place of lodging for that person"; and (5) "the age and self-sufficiency of that person." Id.

In Tucker, the Supreme Court of Appeals surveyed case law from other jurisdictions before concluding that an individual need not live under the same roof as the named insured to be considered a resident of the named insured's household. Id. at 267–68. The cases upon which the Supreme Court relied involved children temporarily living away from home to pursue education, extensive medical treatment, or military service; children of divorced or separated parents; and relatives dependent on the insured person for basic needs. See id. Ultimately, the Supreme Court held that a 38-year-old, unemployed, chronic alcoholic was a resident of his father's household because he lived in a trailer situated 50 to 100 yards from his father's home on the same piece of property and because, despite his age, the man was dependent on his father for his basic needs. Id. at 264. In Spangler v. Armstrong, the

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Supreme Court held that certain relatives were not covered as members of the insured's household because the relatives lived in a house on a separate piece of property, where they paid the mortgage and paid for the utilities. 499 S.E.2d 865, 869 (W. Va. 1997).

Plaintiffs argue that Carley was not a resident of her parents' household at the Windsor Property because she was a self-sufficient adult living primarily at the Koontz Property. Plaintiffs further contend that because Carley was a registered foster parent, was actively fostering children, and was required by DHHR to reside with her foster children at the Koontz Property, Carley could not be a resident of her parents' household at the Windsor Property.

Rodger argues that the supportive nature of Carley's relationship with her parents made her a resident of her parents' household at the Windsor Property. Rodger contends that Carley was a resident of her parents' household because her parents maintain her childhood bedroom, in which she sleeps when she visits; because she shares meals with her parents occasionally; and because her parents offer her some financial support. He also argues that Plaintiffs' own underwriting file for the Windsor Property lists Carley as a member of the household.

ALLSTATE V. ESTATE OF HYRUM W.                    1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Here, after weighing all of the Tucker factors, the Court finds that Carley was not a resident of her parents' household. The first two factors weigh in favor of finding that she was. Carley and her parents did not have a formal landlord-tenant relationship. She never paid rent to her parents and was free to come and go from the Windsor Property as she pleased. The remaining factors, however, weigh against such a finding. At the time of Hyrum's death, Carley was living at the Koontz Property. She had not lived primarily at the Windsor Property for over a decade. She had a full-time job. While her parents helped her financially, she paid for her utilities and was generally responsible for not only her basic needs but the needs of children in her care.

Unlike the 38-year-old in Tucker, Carley was a self-sufficient adult permanently residing with her own family in a separately insured house away from her parents. Carley was not dependent on her parents' support for her basic needs. She was not living at the Windsor Property part-time. Rather, she was staying occasionally, when it was convenient, after taking care of her grandmother or to house-sit when her parents were out of town. Carley only stayed overnight at the Windsor Property four to five times in 2020, prior to becoming a foster parent. Def. Exh. 8,

ALLSTATE V. ESTATE OF HYRUM W.                              1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING**
**DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

ECF No. 65-7, at 31:2-16.  She never spent the night at the Windsor Property with a foster child.  Id. at 31:2-21.  Carley and her parents could not be considered to be "a family living together," especially given Carley's status as a mother and foster mother who lived with her children in a separate home.  See Syl. Pt. 3, Tucker, 576 S.E.2d 261.  The Tucker factors weigh against finding that Carley was a resident of her parents' household.  Accordingly, the Court concludes that there is no coverage available under the Windsor Policy.

> **2.**   **Even if Carley were a resident of her parents' household, the Windsor Policy does not provide coverage because the Koontz Property is not an insured premises under the Windsor Policy.**

Even if Carley were a resident of her parents' household, the Windsor Policy does not provide coverage because the Koontz Property is not an insured premises under the policy.  "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."  Syl. Pt. 1, Christopher v. U.S. Life Ins. Co. in City of N.Y., 116 S.E.2d 864 (W. Va. 1960).  Language may be ambiguous, however, when it is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]"  Syl. Pt. 1, Prete

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

v. Merchants Prop. Ins. Co. of Indiana, 223 S.E.2d 441 (W. Va. 1976).  When the language in an insurance policy is ambiguous, the ambiguous terms "should be construed strictly against the insurer and liberally in favor of the insured[.]"  Id. at Syl. Pt. 2. However, "such construction should not be unreasonably applied to contravene the object and plain intent of the parties."  Id.  "In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in insured's position would have understood the words of the policy to mean."  Thompson v. State Auto. Mut. Ins. Co., 11 S.E.2d 849, 850 (W. Va. 1940) (citation omitted).

Plaintiffs argue that the Windsor Policy additionally does not provide coverage because it contains an exclusion that expressly limits liability to bodily injury arising out of the insured premises.  Rodger argues that the exclusion does not apply because Carley used the Koontz Property in connection with the Windsor Property by living there with her child and foster children and occasionally staying at the Windsor Property.

The Windsor Policy states, in what is often referred to in the briefing as "Exclusion 13," "**We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**."  Def.

13

ALLSTATE V. ESTATE OF HYRUM W.                    1:24-CV-06

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]

Exh. 4, ECF No. 65-3, at 52.  The Windsor Policy's definition of "insured premises" includes "any premises used by an **insured person** in connection with the **residence premises**[.]"  Id. at 32.  Assuming arguendo that this definition is ambiguous and construing it liberally in favor of the insured, and assuming that Carley is an insured person (she is not), no reasonable person would have understood that the Koontz Property was an insured premises under the Windsor Policy.  Not only was Carley living at the Koontz Property with her child, her foster children, and her romantic partner, but the Koontz Property was a separately insured home on a separate piece of property.

Rodger relies on a series of non-binding cases to argue that the Koontz Property was used in connection with the Windsor Property.  The main cases cited by Rodger involved ATV or other vehicle accidents that occurred on property in which the insured did not have a legal interest.  See Allstate Ins. Co. v. Drumheller, 185 F. App'x 152 (3d Cir. 2006); Farmers New Century Ins. Co. v. Angerson, No. 4:04-cv-2608, 2008 WL 238622 (M.D. Pa. Jan. 22, 2008); State Farm Fire & Cas. Co. v. Nivens, No. 0:12-00151-MBS, 2014 WL 4793987 (D.S.C. Sep. 24, 2014).  The courts reasoned that the regular and repeated use of the property not owned by the insured was sufficient to find that the property was

14

ALLSTATE V. ESTATE OF HYRUM W.                          1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

used in connection with the insured premises.  Here, on the other hand, the Koontz Property is owned and separately insured by Carley and her parents.  Carley lived there with her own family as her primary residence.  Extending the definition of insured premises to include the Koontz Property goes beyond the plain intent of the parties.  Because the Koontz Property is not an insured premises under the Windsor Policy, the Court finds that there is no coverage under the Windsor Policy for this additional reason.

> **3.    Plaintiffs are not estopped from asserting and did not otherwise waive the applicability of Exclusion 13.**

"Generally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract."  Syl. Pt. 5, <u>Potesta v. U.S. Fid. & Guar. Co.</u>, 504 S.E.2d 135 (W. Va. 1998).  To establish waiver, "the insured must show, by clear and convincing evidence where the waiver is implied, that the insurer intentionally and knowingly waived the previously unarticulated reason(s) for denying coverage."  <u>Id.</u> at Syl. Pt. 3.  To establish estoppel, the insured must show (1) "conduct or acts on the part of the insurer which are sufficient to justify a reasonable belief on the part of the insured that the insurer will not insist on a compliance with the provisions of the policy"; and (2) "the insured in reliance upon

**ALLSTATE V. ESTATE OF HYRUM W.** 1:24-CV-06

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

such conduct or acts has changed his position to his detriment." Id. at Syl. Pt. 2 (citation omitted).

Rodger argues that Plaintiffs waived the application of Exclusion 13 or are otherwise estopped from denying coverage based on it because it was not cited in Plaintiffs' written coverage denial letter. The Court disagrees. First, Plaintiffs did not explicitly or implicitly waive Exclusion 13. Their letter denying coverage explicitly stated that Plaintiffs did not waive, and expressly preserved, all of the terms, conditions, limitations, and exclusions under the relevant policies. Second, there is no evidence in the record to justify a reasonable belief that Plaintiffs would not insist on compliance with the provisions contained in the insurance policies. Finally, Rodger has not explained how he relied on the failure to reference Exclusion 13 to his detriment. Because Plaintiffs did not waive their right to assert Exclusion 13 as a reason to deny coverage, and because Plaintiffs are not estopped from denying coverage, there remains no coverage available under the Windsor Policy.

**B.    The PUP Policy does not provide coverage.**

Alternatively, Rodger asserts that Carley is covered under the PUP Policy. Specifically, Rodger contends that coverage exists under either Section 1 or Section 2 of the "Excess

16

**ALLSTATE V. ESTATE OF HYRUM W.**                               **1:24-CV-06**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

Liability — Bodily Injury and Property Damage" provision. Plaintiffs argue that neither section applies to Carley. Plaintiffs do not appear to argue that point one of Section 2 provides coverage. The sections of the PUP Policy at issue, therefore, are Section 1 and point two of Section 2.

First and foremost, the Court finds that Carley is not covered under the PUP Policy because she is not an insured person, and she is only listed as a vehicle operator. She is not a named insured, and for the reasons discussed above with respect to the Windsor Policy, she is not a resident of their household. This incident did not arise from her operation of a motor vehicle. Therefore, she is not an insured person under the PUP Policy. Even if she were an insured person, however, the specific language of the PUP Policy precludes coverage.

> **1.    Section 1 does not provide coverage because Hyrum's death was not covered by the Required Underlying Insurance.**

Section 1 of the PUP Policy provides,

> Under Section 1 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising out of an **occurrence** that is both a loss **we** cover under **Excess Liability Insurance – Bodily Injury and Property Damage – Section 1** of this policy and a covered loss under **your** Required Underlying Insurance policy.

17

**ALLSTATE V. ESTATE OF HYRUM W.**                    **1:24-CV-06**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

. . .

> **Losses We Cover Under Excess Liability Insurance – Bodily Injury and Property Damage – Section 1**
>
> **We** will cover an **occurrence** arising only out of:
>
> 1.   Personal activities of an **insured person**.

Def. Exh. 5, ECF No. 65-4, at 18 (emphasis in original).  The language in Section 1 of the PUP Policy is clear and unambiguous. For an insured person to be covered under Section 1, the claimed bodily injury or property damage must be covered under both Section 1 of the PUP Policy and the insured person's Required Underlying Insurance policy.  As discussed above, Hyrum's death is not covered by the underlying policies, i.e., the Windsor Policy and the Koontz Policy.  Because neither policy provides coverage for Hyrum's death, Section 1 of the PUP Policy does not provide coverage.

> **2.   Point two of Section 2 does not provide coverage because coverage was required and in effect, but it was excluded.**

Section 2 of the PUP Policy states,

> Under Section 2 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising only out of:
>
> . . .
>
> 2.   a covered **occurrence** for which **you** are required by this policy to maintain Required

18

**ALLSTATE V. ESTATE OF HYRUM W.**                                    **1:24-CV-06**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING
DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]**

> Underlying Insurance but there is no Required
> Underlying Insurance in effect at the time of
> the **occurrence**.

Id. at 19 (emphasis in original).  Although Family Liability Protection was "not purchased" with respect to the Koontz Policy, the Koontz Policy contains a Secondary Residence Endorsement:

> **Your** policy provides **Family Liability
> Protection — Coverage X** and **Guest Medical
> Protection – Coverage Y** under **Section II** of
> the policy for the **insured premises**.  However,
> if this policy providing **Family Liability
> Protection – Coverage X** and **Guest Medical
> Protection – Coverage Y** is no longer in force,
> whether canceled of otherwise terminated, no
> coverage for **Family Liability
> Protection – Coverage X** or **Guest Medical
> Protection – Coverage Y** shall apply.

See Def. Exh. 2, ECF No. 65-1, at 20.  The coverage is subject to the exclusions applicable to the Koontz Policy.  Under both the Koontz Policy and the Windsor Policy, coverage was required and in effect but excluded.[4]  Accordingly, point two of Section 2 of the PUP Policy does not provide coverage.

### IV.  CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

- Plaintiffs' motion for summary judgment is **GRANTED** [ECF No. 61];

---

[4] Although not discussed in detail herein, the Koontz Policy does not provide coverage for Hyrum because, as someone under 21 in the care and custody of Carley (a named insured), Hyrum is an insured person, and bodily injury to an insured person is expressly excluded.  See Def. Exh. 2, ECF No. 65-1, at 23.

ALLSTATE V. ESTATE OF HYRUM W.                    1:24-CV-06

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61] AND DENYING DEFENDANT RODGER W.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 62]

- Rodger's motion for summary judgment is **DENIED** [ECF No. 62];

- The Windsor Policy, the Koontz Policy, and the PUP Policy do not provide coverage for claims arising from the death of Hyrum;

- The Clerk is **DIRECTED** to enter judgment in favor of Plaintiffs; and

- This action is **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 27, 2026

_Tom S Kleeh_

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA